## DELGADO *v.* THE EXECUTIVE COUNCIL OF PORTO RICO.

## APPLICATION for a Writ of Mandamus.

### No. 3.—Decided November 1, 1904.

MANDAMUS—JURISDICTION.—The object of the words "within its jurisdiction," as employed in section 1 of the law of *mandamus,* was to indicate the persons, companies, corporations, or inferior courts upon whom the writ of *mandamus* issued by the Supreme Court or by the district courts should operate.

ID.—JURISDICTION OF THE SUPREME COURT.—The jurisdiction of the Supreme Court of Porto Rico is coextensive with the Island and extends to every place where the statutes of Porto Rico have their force.

ID.—JURISDICTION OF THE DISTRICT COURTS.—The jurisdiction of the district courts is limited in their territorial limits to their respective districts.

ID.—The Supreme Court has original jurisdiction to issue writs of *mandamus.*

ID.—DEMURRER—SUFFICIENCY OF APPLICATION.—Although, under section 8 of the *mandamus act,* it is doubtful whether in proceedings of this nature a demurrer may be interposed to the application, nevertheless the court has power to examine on its own motion the sufficiency of the same.

ID.—ATTORNEY GENERAL.—It is the duty of the Attorney General to represent and defend before the courts of justice the officers and agents of the Government of Porto Rico in cases of *mandamus.*

ID.—TITLE OF APPLICATION.—The custom of bringing suits for *mandamus* in the name of the State on the relation of the real party to the suit is followed in many States of the Union, but the better practice appears to be to entitle said suits in the same manner as any other ordinary suits.

ID.—THE PEOPLE OUGHT NOT TO APPEAR AS A PARTY TO THE PROCEEDING.—When the relator presents the application for his own benefit, and the People of Porto Rico has no interest whatever, in the suit, not being a necessary party to the same, its name should not be used, and it is not necessary that the plaintiff be authorized by the Attorney General or by any other officer representing the State to enable him to appear before the courts and seek the enforcement of his rights.

ID.—MINISTERIAL ACT.—A writ of *mandamus* will properly issue when the act which is sought to be compelled is a ministerial one and does not involve the exercise of any judicial discretion.

ID.—PROPER PARTIES DEFENDANT.—The party whose duty it is to perform the act in question is the real and only necessary party defendant in the case.

ID.—ANSWER OF DEFENDANT.—The defendant in a suit for *mandamus* is not required to answer allegations made by way of inducement and for the purpose of strengthening the rights of the relator, and which tend to show that the latter has been injured in the community either financially or in his public record or future.

ID.—DEMURRER.—In the consideration and determination of a demurrer, the court must presume that all the facts stated in the application are true.

ID.—FAILURE TO ANSWER.—Where the defendant fails to file an answer to an application for *mandamus*, either denying or explaining the facts stated therein, the same must be taken as true, and in this case a peremptory writ of *mandamus* should issue ordering the performance of the act sought to be enforced.

ELECTIONS—CERTIFICATE OF NOMINATION—RESIGNATION OF CANDIDATES.—The certificate of nomination of a candidate to an office by popular election having been filed, no one has the right to withdraw his name except the candidate himself, and he can only do so within three days after the filing of such certificate and not less than twenty days preceding the election.

ID.—DEATH, RESIGNATION, OR REMOVAL OF CANDIDATES.—Only in case of the death, resignation, or removal from the Island of a candidate subsequent to his nomination for the office can the president of the party or of the central committee thereof designate another candidate to occupy the position which has become vacant.

MANDAMUS—BALLOTS.—*Mandamus* is the appropriate remedy to compel the Executive Council to insert in the ballot the name of a candidate, duly nominated to fill an office by popular election, in cases in which his name is unlawfully omitted from such ballot.

The facts are stated in the opinion.

*Mr. Anderson*, for plaintiff.

*Mr. Sweet, Attorney General*, and *Mr. Rossy, Fiscal*, for the defendant.

MR. JUSTICE MACLEARY rendered the opinion of the court.

This is an application made to this Supreme Court by Rafael M. Delgado, complaining of the Executive Council of Porto Rico, and seeking *mandamus* to compel that body to replace his name upon the official ballots as the Republican candidate for a member of the House of Delegates from the district of Aguadilla.

Although not raised in the pleadings, a question was presented in the course of the argument as to the original jurisdiction of this court in suits of this nature. Naturally, this question will be the first to be examined and determined. If the court has no jurisdiction to issue *mandamus* in such a case as that presented, there is no occasion to go further into the matter. In the courts of some of the States of the Union, the jurisdiction of the appellate courts in matters pertaining to *mandamus* is limited to the necessity of enforcing its own

jurisdiction; that is to say, that such writs cannot be issued by an appellate court, except when necessary to the full exercise of its appellate powers.

Although the statutes of all the States are not accessible to us, we believe that this limitation of jurisdiction will be found to arise from constitutional or statutory provisions expressly placing such limitations upon the jurisdiction of the appellate courts, in matters of *mandamus*.   Our own jurisdiction is derived from the statute itself, which was an act passed by the Legislature of Porto Rico on the 12th of March, 1903.   Section 1 of that act reads as follows:

"Section 1.—Mandamus is a high prerogative writ issuing out of the Supreme Court or District Courts of Porto Rico, in the name of the People of Porto Rico, directed to any natural person, persons, company or corporation or inferior court of judicature within its jurisdiction requiring them to do some particular act therein specified and which appertains to their office or duty.   It confers no new authority and the party to be coerced must have power to perform the act."

Were it not for the words "within its jurisdiction" probably this question would not have arisen.   It would seem from a careful study of the language of this section that these words were intended to limit the persons, companies, corporations or inferior courts upon whom the writ of *mandamus* issued by the Supreme Court, or by any one of the district courts, should operate; and had it not been that the district courts, as well as the Supreme Court, were mentioned in the prior part of the section the words "within its jurisdiction" would not have been necessary, as the jurisdiction of the Supreme Court is coextensive with the Island, and extends to every place where the statutes of Porto Rico have their force. In other words, the territorial jurisdiction of the Supreme Court of Porto Rico is the same as the territorial jurisdiction of the Legislature, although the district courts are limited to their respective districts.   This section apparently means

the same as if it had been written that the writ of *mandamus* might issue to any person, company or corporation, or inferior court of judicature having its domicile within the jurisdiction of the court issuing the same.   Any other construction of this section would involve the court in numerous difficulties and unnecessarily curtail the power which was intended to be confided to it by the legislative authority.   Taking this view of the matter we have no doubt of the jurisdiction of this court to issue the *mandamus* prayed for by the appellant in this case.

In support of this view reference is made to the *mandamus* act of the Legislature set out in the Acts and Resolutions of the First Session of the Second Legislative Assembly of Porto Rico, on pages 113 to 116, inclusive, and especially to sections 1 and 2.   Reference may also be had to Bailey on Jurisdiction, section 634; 19 American and English Encyclopedia of Law, pp. 897 and cases were cited; *Marcum* v. *Ballot Commissioners*, 47 West Virginia 263; *People* v. *State Board of Canvassers*, 14 L. R. A., p. 646; *State of South Carolina* v. *Whitesides*, 3 L. R. A., p. 777; *Sims* v. *Daniels*, book 35 L. R. A., 146; *State* v. *Cunningham*, 83 Wis., 90, 35 Am. State Rep. 27.

The Executive Council through its president, Hon. Régis H. Post, Secretary of Porto Rico, has appeared in this court by counsel, after having been duly cited, and filed a demurrer setting out various objections to the application made by the relator, and no answer is filed herein unless it may be that a paper styled a memorandum may be so considered.   Section 8 of the *mandamus* act reads as follows:

"Section 8.—On the return day of the alternative writ, or such further day as the court may allow, the party on whom the writ shall have been served, may show cause by answer under oath made in the same manner as an answer to a petition or declaration in a civil action."

Under this section it is doubted whether a demurrer could be interposed, but inasmuch as the sufficiency of the application could be examined by the court of its own motion, the several objections set out by way of demurrer will be considered.

The first section of the demurrer is the general one that the complaint does not state facts sufficient to constitute a cause of action. This will be deferred until the other points are examined.

The second section raising the question of the capacity of plaintiff to bring this suit was presented by the Attorney General with great earnestness and will be reviewed at some length. The style of the case in the petition reads *"The People of Porto Rico* vs. *The Executive Council of Porto Rico, Ex rel. Rafael M. Delgado."* This was made the basis of severe criticism.

This objection to the manner in which the title of the case is written may be disposed of with the remarks that it is merely grammatical and may have been the result of an error on the part of the copyist. If necessary the applicant could be permitted to correct the phraseology and place the words "Ex rel Rafael M. Delgado" above the word *versus* in the title of the case. It is evident from other portions of the application that Rafael M. Delgado is intended to be made a plaintiff and not a defendant in this cause. He signs the application and swears to it before a notary, and in the oath states "that he is the petitioner in the above bill of complaint." Taking the whole complaint together we can certainly allow a party to correct a clerical error in the title [when it appears] from the other facts of the application that it is necessary so to do.

Then considering that this suit is brought in the name of The People of Porto Rico on the relation of Rafael M. Delgado against the Executive Council of Porto Rico, has the

attorney representing complainant authority to appear in this court and use the name of The People of Porto Rico as plaintiff herein?

Section 64 of the Political Code is cited by the Attorney General and reads as follows:

"The Attorney General shall represent the People of Porto Rico in all suits and proceedings, civil and criminal, to which it is a party; in civil proceedings he shall have the sole representation before the Insular courts of the People of Porto Rico, and of any officer, employee or agent of the Insular government, suing or being sued in his official capacity; *Provided, however,* that public prosecutions for crimes, except as hereinafter provided in section 74, shall be conducted by the *fiscal* of the proper court without special authority from the Attorney General; but in all such cases the Attorney General may intervene in the public interest."

As the Executive Council of Porto Rico is certainly a part of the Insular government, or an agency of the same, it is clearly the duty of the Attorney General to represent it in this litigation, which he is doing in making his appearance in this court.

The custom of bringing suits for *mandamus* in the name of the State on the relation of the real party at issue is followed in many States of America, but it seems to us that it is the better practice to observe the style used in other States which merely entitle the suits for *mandamus* in the same manner as ordinary suits. New York is one of the states which follow the old practice of using the name of the State as plaintiff on the relation of the real party in interest. In the case of *The People of the State of New York Ex rel. Franklin D. Sherwood* vs. *The State Board of Canvassers,* which is found reported in Book 14 L. R. A., on pp. 616 *et seq.,* it is said in the syllabus that "The rights of the relator alone, and not those of the public, will be considered upon an application for a writ of *mandamus* in the name of The People at the relation of a candidate for office to compel the issuance of a certificate

of his election; *the people are in such case merely formal parties.*"

The case of the *State* v. *Cunningham,* reported in 35 Am. St. Rep., p. 27, from 83 Wisconsin, page 90, holds that the cases in which the leave of the Attorney General is necessary to bring suit are those involving matters strictly *publici juris,* in which no one citizen has any right or interest other than that which is common to citizens in general.

These cases present the correct view of the matter and apply with full force to the case before us. Rafael M. Delgado brings this suit for his own benefit, and The People of Porto Rico have no interest in it whatever and their name need not have been used; and as the State is in this case merely a formal party and an altogether unnecessary one, no permission of the Attorney General nor of any other officer representing the State was necessary to enable the plaintiff, or his attorney in his behalf, to appear in this court and seek the enforcement of his rights. The second section of the demurrer is therefore of no avail.

The third point raised in the demurrer touches the position of the Executive Council as a party defendant. It reads as follows:

"That the Executive Council is not a proper party defendant, in that it does not exercise discretionary or original powers with relation to the matters in behalf of which said action was brought."

It seems to us that the reasons given go to show nothing in regard to the proper parties defendant, but do show that this is a case in which a *mandamus* may properly issue to the Executive Council; since it is merely a ministerial act which is sought to be compelled and one not involving any judicial discretion.

This is in accordance with the well-known principles of law applicable to this high prerogative writ. Reference is made to 19 American and English Encyclopedia of Law, pp.

740 and 741, and cases there cited, and to *Marcum* v. *Ballot Commisioners,* 36 L. R. A. 296 *et seq.; State of South Carolina Ex rel. Charleston* v. *Whitesides,* 3 L. R. A., 779.

The fourth objection presented by the demurrer is that there is a nonjoinder of parties defendant. It is said that Rossy and Sifre ought to be made defendants, since they are the parties charged with the fraud and misrepresentation alleged in the complaint. The language of the whole complaint must be kept in view. It is not the object of this suit to recover damages for fraud or misrepresentation, committed by any one, but to compel the performance of an act which may have been caused by the alleged fraud and misrepresentation; and since the Executive Council is alleged to be the party whose plain ministerial duty it is to do the act, it is the proper party defendant, and the only necessary party defendant in the case.

It may be that the applicant has a cause of action against the persons named on account of the illegal acts referred to, but that fact does not interfere with his controversy with the Executive Council of Porto Rico, which is the only matter before us at this time. For these reasons we cannot see that there is any nonjoinder of parties defendant herein of which the Executive Council can complain.

The fifth point set out by the demurrer reads as follows:

"That the complaint, in so far as it alleges financial injury, as well as an injury to the public record or future of Rafael M. Delgado, if he should be permitted by this court to be considered as an authorized relator in said action, is too remote and too indefinite in character to enable the defendant to answer thereto; and that all allegations relating to said phase of said complaint are, for the reasons given, so indefinite and uncertain as to make it impossible for the defendant to answer the same."

The remarks under the previous point will apply to some extent to this also. The allegations of financial injury and injury to the public record or future of the applicant are

merely made as matter of inducement, and no prayer for relief is made in regard thereto. They might have been stricken out on motion of the defendant if it had been thought important enough to require such action. No specific answer to the same is required on behalf of the respondent, since no pecuniary judgment is sought against it on account of such injuries.

The prayer of the complainant is confined solely to a request that a writ of *mandamus* may issue directing the Executive Council to include the name of applicant upon the official ballots of the Republican party as a candidate for the position of delegate to the Legislative Assembly of Porto Rico from the district of Aguadilla. This is the object, and the sole object of the suit, and the question of pecuniary damages need have no further consideration than to tend to show that the applicant has a substantial right, which he alleges is being withheld from him by the nonaction of the Executive Council.

To recur to the general demurrer as the first point presented. On a review of the petition and taking the allegations therein contained to be true as we must do for the purposes of the demurrer, we are compelled to the conclusion that it plainly states a cause of action. The relator alleges that he was unanimously nominated by the Republican convention of the district of Aguadilla as a candidate for delegate to the Legislative Assembly, and that this action of the nominating convention was properly certified to the Executive Council of Porto Rico, through the Insular Secretary; that he has never resigned as such candidate, nor requested his name to be withdrawn from the list of candidates, but that, on the contrary he has declined a nomination made of him for an incompatible office, and signified the same to the Insular Secretary, and that through fraud and misrepresentation the central committee of the Republican party secured the erasure of his name as a candidate and the substitution of another in its place, stating fully the means used and the particulars of such fraud and misrepresentation. The complaint further states

that the Executive Council, being thus deceived, failed to print his name as a candidate for the office to which he had been nominated, as it was its plain ministerial duty to do, and requests the writ of *mandamus* for the purpose of restoring his name to the list of the candidates, and requiring the same to be printed on the ballots.

This in our opinion clearly sets out a good cause of action and the petition is not subject to general demurrer.

What has the respondent to say by way of answer to this complaint?

The "memorandum" filed herein by the Attorney General cannot be considered in any sense as an answer to the complaint. It is merely a brief of the authorities, combined with an argument made in support of a demurrer previously filed; taken as such, it has had our careful consideration. As no proper answer has been filed, the pleadings then considered in the most favorable light towards the defendant can only consist of the complaint made by the applicant, Rafael M. Delgado, and the demurrer presented by the Executive Council. Under this state of the pleadings the facts alleged in the complaint not having been denied or explained in any manner must be taken to be true. Considering them upon their face we must look into the election laws, which are applicable to these facts. By section 22 of the Election Law it is made the duty of the Executive Council to cause to be printed on the official ballot the names of the candidates nominated by the conventions of any party that casts 5 per cent. of the total vote of Porto Rico at the last election held, as the names of the candidates nominated may be certified to the Secretary of Porto Rico by the presiding officer and secretary of the convention or caucus or committee making such nomination; it is also provided in the same section that in the case of the death, resignation or removal of any candidate subsequent to nomination, unless a supplemental certificate or petition of nomination be filed with the Secretary of State, the president of the

central committee of the party shall fill such vacancy. And the said section also requires the Executive Council to cause the names of all candidates for the House of Delegates in the district in which such candidates may be running, and the names of the candidates for Commissioner to the United States, and all other candidates, to be printed on one ballot, with names placed under the title and device of the party or petitioners, as designated by them in their certificate or petition, or if none be designated, under some title and device.

Thus we see that according to the allegations of the petition the law has been complied with in so far as the names of the candidates nominated were certified to the Secretary of Porto Rico by the convention which nominated them at Aguadilla. It is true that this certification was made through the central committee of the Republican party, but there is nothing in the law to prevent this course being taken. But after this certification was made and the name of Rafael M. Delgado appeared on the certificate, another document was filed by the central committee, through Manuel F. Rossy, president, and Jaime Sifre, secretary, certifying that Rafael M. Delgado having renounced the nomination, by accepting another place in the local candidature of Yauco, Juan Roig was nominated in his place. This document, together with the certification of the original candidates, seems to have been presented at the same time to the Executive Council by the Insular Secretary. It also appears from the allegations of the complaint and by the documents attached as exhibits thereto, that Rafael M. Delgado having been nominated as a candidate for a member of the school board in the town of Yauco, and also as a delegate to the Legislature by the district of Aguadilla, and taking into consideration that according to the election laws the same could not appear twice upon the ballot, renounced the nomination for the school board and accepted the nomination as a delegate, and this fact was communicated to the Insular Secretary on the 11th of October, 1904. Again on the

19th of October, 1904, it being the same day on which the nominations were filed by the central committee in the office of the Secretary of Porto Rico, the applicant herein sent a telegram to the Secretary of Porto Rico, asking if he had received his letter resigning the nomiation as a member of the school board, and accepting the nomination as a delegate to the House for the district of Aguadilla, and requesting the Secretary to act accordingly and notify applicant immediately. Again on the 21st of October, in another telegram to the Secretary of Porto Rico, the applicant requested that he should be dropped from the nomination to the school board, inasmuch as he was nominated in the convention to be a member of the House, and had not resigned, and asking if he could compel his inclusion and requesting an answer. Whether or not these several telegrams and letters were ever answered by the Secretary does not appear. At any rate, the Executive Council acting in the matter, caused the ballots to be printed and saw fit to include the name of Juan Roig as a candidate for delegate to the Legislative Assembly for the district of Aguadilla and omitted the name of Rafael M. Delgado. Of this action the applicant complains, and requests a writ of *mandamus,* and alleges, as a matter of inducement, or incidentally to the main facts, that the president and secretary of the Republican central committee had committed fraud and misrepresentations, and had made a false statement to the effect that he had resigned, by accepting another place on the local candidature of Yauco, when, on the contrary, he had refused that nomination and accepted the nomination to the Legislature. By section 23 of the Election Law it is provided as follows:

"If any candidate whose nomination has been certified according to law shall wish to resign from such ticket, he shall file his resignation in writing with the Secretary of Porto Rico within three days after the filing of such certificate of nomination, and any resignation filed after the time mentioned in this section shall not be

considered; *Provided,* that no resignation shall be filed with, or received by, the Secretary of Porto Rico within twenty days immediately preceding an election.''

It would appear from a fair consideration and interpretation of this section that no one has a right to withdraw the name of a candidate from a ticket after his nomination has been duly certified to the Secretary of Porto Rico, except the candidate himself, and that he must do so within three days after the filing of such certificate of nomination and not less than twenty days preceding the election.

If the president of the central committee had any authority to erase the name of Delgado and insert the name of Roig, it was under that clause of section 22 of the Election Law which says:

''In case of the death, resignation or removal of any candidate subsequent to nomination, unless a supplemental certificate or petition of nomination be filed, the president of the central committee of the party shall fill such vacancy.''

. According to the facts, as stated in the complaint, and as shown by the exhibits attached thereto, and which, not having been denied or explained, for the purposes of this case must be taken as true, there was no death, resignation or removal of any candidate upon the ticket of the Republican party for the district of Aguadilla, and the case did not arise in which the president of the party or of the central committee had a right to fill a vacancy, as no vacancy existed, and of course there was none to fill.

After the name of Rafael M. Delgado had been certified to the Secretary of Porto Rico as the candidate of the Republican party for the position of delegate to the Legislative Assembly from the district of Aguadilla, no one had a right to withdraw his name except the candidate himself, and it was only in the case of his death or resignation, or his removal from the Island, thereby creating a vacancy, that the president

of the central committee of the Republican party could have filled the vacancy. This provision of the law appears to have been well known to the president and the secretary of the central committee, for in the document which they filed with the Insular Secretary, they recite as a fact that Rafael M. Delgado had resigned the candidacy for the Legislative Assembly by accepting another place upon the local candidacy of Yauco, which statement, according to the allegations in the complaint, was not true, but being accepted by the Secretary as true (overlooking the letter addressed to him by Rafael M. Delgado on the 11th of October) the name of Delgado was omitted from the ballot as presented to the Executive Council and as thereafter printed, and the name of Roig substituted therefor. Whatever reasons may have existed for this action do not appear in the record, no answer being filed herein as required by the statute.

It does not appear that the Executive Council was in any particular directly a party to the fraud or misrepresentation which is alleged by the complainant, but at most could only be considered as negligent in accepting the names on the ballot as they were changed in accordance with the representation made by the Republican central committee. We have nothing to do with the motives which caused this change. The mere fact that the name of Delgado was omitted, when it should have been included as a candidate for the Legislative Assembly, is all with which we have any concern in the decision of this case.

The allegations of the complaint being sufficient to make out a case, and showing that the applicant is entitled to the relief sought, we must look to the answer of the respondent, which should have been filed, under section 9 of the act in regard to *mandamus*. This section reads as follows:

"If no answer be made, a peremptory *mandamus* must be allowed against the defendant; if answer be made containing new matter, the same shall not in any respect preclude the plaintiff who may,

on the trial or other proceeding, avail himself of any valid objections
to its sufficiency or may countervail it by proof either in the direct
denial or by way of avoidance.'' Laws of 1903, p. 115.

As no answer has been filed in accordance with the law
above quoted, a ''peremptory *mandamus* must be allowed
against the defendant'' and the prayer of the petitioner must
be granted. Accordingly, the alternative writ which has here-
tofore been issued will be made peremptory, and the secretary
of this court should prepare and issue the necessary writ to
the respondent herein.

*Decided accordingly.*

Chief Justice Quiñones and Justices Hernández, Figueras,
and Wolf concurred.